```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION

CASSANDRA L. ALDRIDGE,          *
                                *
     Plaintiff,                 *   CIVIL ACTION NO. 15-00006-B
                                *
vs.                             *
                                *
CAROLYN W. COLVIN,              *
Commissioner of Social Security,*
                                *
     Defendant.                 *
```

## ORDER

Plaintiff Cassandra L. Aldridge (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 15, 2015, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 15, 16). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff filed an application seeking a period of disability and disability insurance benefits on August 26, 2011 alleging disability due to rheumatoid arthritis in all joints, severe edema, thyroid issues, diabetes, chronic sinus and lung issues, potassium deficiency, and severe fish allergy. (Tr. 11). The application was initially denied on November 4, 2011, and Plaintiff timely filed a Request for Hearing on November 28, 2011. (Id. at 63, 71-72). While Plaintiff's Request for Hearing (on her application for disability and disability insurance benefits) was pending, she filed an application for Supplemental Security Income ("SSI") on September 24, 2012.  (Id. at 133-140).  The SSI claim was forwarded to the Office of Disability Adjudication and Review, and a hearing on both claims was held before Administrative Law Judge ("ALJ") Thomas M. Muth II in Mobile, Alabama on January 1, 2013. (Id. at 37-61). Plaintiff testified at the hearing as did a vocational expert ("VE"). (Id.).

On June 24, 2013, the ALJ issued a partially favorable decision.  (Id. at 18-36).  With respect to Plaintiff's claim for disability and disability insurance benefits, the ALJ found that Plaintiff had sufficient quarters of coverage to remain insured through December 31, 2010; thus, she had to establish that she was disabled on or before that date in order to be

2

entitled to disability and disability benefits. The ALJ concluded that Plaintiff was not disabled *prior* to September 13, 2012, and that she became disabled on that date and continued to be disabled through the date of his decision. (Id. at 22). As a result of said findings, Plaintiff was not entitled to disability and disability benefits; however, she was entitled to receive SSI benefits. Plaintiff sought review, and the Appeals Council denied her request on November 21, 2014. (Id. at 1-7). Thus, the ALJ's decision dated June 24, 2013 became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

> **Whether the ALJ erred by failing to enlist the services of a medical advisor to determine the onset date of Plaintiff's disability.**

## III. Factual Background

Plaintiff was born on July 10, 1978, and was thirty-four years of age at the time of her administrative hearing on January 22, 2013. (Tr. 28, 41). She testified that she completed her college education in May of 2008. (Id. at 41-42,

3

54). Plaintiff has past employment as a cashier, receptionist, and teacher. (Id. at 42-43, 46, 144-146, 160-161).

Plaintiff's alleged onset date of disability is May 12, 2007. (Id. at 148). According to Plaintiff, she began having ongoing problems with edema in 2006. Her doctors believed it was caused by hyperaldosteronism.[1] (Id. at 51). Around March of 2006, Plaintiff also began having problems with her thyroid (which caused her to gain weight), and she began suffering from severe allergies, sinus problems, infections, pneumonia, and a potassium deficiency. (Id. at 52-54). In 2007, Plaintiff also began having severe problems with rheumatoid arthritis. (Id. at 47). Plaintiff testified that she is currently unable to work due to rheumatoid arthritis, massive amounts of edema, potassium deficiency, allergies, chronic pneumonia, sinus issues, and thyroid difficulties. (Id. at 45).

Plaintiff lives with her husband and two small children, ages twelve and three. (Id. at 45-46). Plaintiff testified that she homeschools both children, and that her husband was staying home to assist her. (Id. at 46).

**IV. Analysis**

---

[1] Hyperaldosteronism is a disorder in which the adrenal gland releases too much of the hormone aldosterone into the blood. See https://www.nlm.nih.gov/medlineplus/ency/article/000330.htm.

4

A.   <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

B. **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3] 20 C.F.R.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 12, 2007, the alleged onset date, and that she has the severe impairments of obesity, right Baker's cyst, bilateral lower extremity pedal edema, rheumatoid arthritis, cholecystitis s/p cholecystectomy, muscle tension headaches, bronchitis, sinusitis, and depression.  (Tr. 24, 148).  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 31).

The ALJ concluded that Plaintiff's last insured date was December 31, 2010, and that based on the evidence before him, on said date, she had the residual functional capacity (hereinafter "RFC") to perform sedentary work, except that she:

> "could lift and/or carry 10 pounds occasionally and items of negligible weight frequently.  She could stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday but required the option to sit/stand every 45 minutes.  She could perform occasional pushing and/or pulling with the upper extremities, bilaterally, and occasional pushing

---

1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

> and/or pulling with the lower extremities, bilaterally. She could perform occasional balancing, occasional stooping, occasional kneeling, occasional crouching, occasional crawling, and occasional climbing of ramps and stairs. She could perform no climbing of ladders, ropes or scaffolds. She could perform frequent reaching, bilaterally; frequent handling, bilaterally; frequent fingering, bilaterally; and frequent feeling, bilaterally. She could tolerate occasional exposure to extreme cold, occasional exposure to extreme heat, and occasional exposure to pulmonary irritants. She was required to avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. She would have had one unplanned absence per month."

(Id. at 25-26).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible to the extent that they were inconsistent with the RFC assessment. (Id. at 27). Utilizing the testimony of a VE, the ALJ found that considering Plaintiff's residual functional capacity for a range of sedentary work, with the stated restrictions, as well as her age, education and work experience, Plaintiff is capable of performing her past work as a data entry clerk (sedentary, skilled) and as a receptionist (sedentary, semi-skilled). (Id. at 31). Thus, the ALJ concluded that Plaintiff is not entitled to disability or disability insurance benefits because she was not disabled on or before her last insured date of December 31, 2010. (Id. at 31-

32).

In addition, based on the evidence related to Plaintiff's medical condition through *September 13, 2012* (the date that she filed her application for SSI benefits), the ALJ modified Plaintiff's RFC and determined that she could no longer perform her past work and in fact could not perform any jobs in the national economy. (Id. at 30-32). Therefore, the ALJ concluded that Plaintiff has been disabled beginning September 13, 2012, and has continued to be disabled through the date of the decision. (Id. at 32).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

1. **Issue**

   **Whether the ALJ erred in failing to enlist the services of a medical advisor to determine the onset date of disability?**

Plaintiff's sole argument on appeal is that the ALJ erred in failing to utilize the services of a medical advisor to determine the onset date of her disability. Specifically, Plaintiff argues that the ALJ's decision does not provide a sufficient explanation of why he selected the September 13, 2012 onset date, and that he was required, under SSR 83-20, to enlist the services of a medical advisor to aid in making this determination. (Doc. 12 at 2-3). The Commissioner counters

9

that Plaintiff does not point to any relevant evidence contradicting the ALJ's finding that she was not disabled prior to December 31, 2010, and that SSR 83-20 requires medical expert testimony only where the evidence of onset is "ambiguous or inadequate." (Doc. 13 at 3-4) (internal citations omitted). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

The undersigned observes, as a preliminary matter that in order to be eligible for a period of disability and disability insurance benefits, the onset date of Plaintiff's disability must have occurred on or before her date last insured, which is December 31, 2010. (Tr. 22). The ALJ clearly found that Plaintiff's onset date did not occur on or before her date last insured. Instead, he fixed her onset date as September 13, 2012, the date that Plaintiff filed her application for SSI benefits. (Tr. 133-40). As explained herein, in this case, the precise date that Plaintiff's impairments became disabling is not important, as long as it did not occur prior to her date last insured. In other words, Plaintiff was not eligible for a period of disability and disability insurance benefits at any time after December 31, 2010, nor was she eligible for SSI at any time before September 13, 2012, the date of her SSI application. So, if her disability onset date occurred at any time after December 31, 2010, and September 13, 2012, it is of

no consequence to her appeal. Thus, the Court will review this case to determine if there is substantial evidence to support the ALJ's determination that Plaintiff's disability did not begin prior to December 31, 2010 or whether, as Plaintiff argues, the evidence was ambiguous or inadequate and, thus, required a medical expert to answer that question.

While it is undisputed that the ALJ did not utilize a medical professional at the hearing to determine Plaintiff's onset date, the undersigned finds that there was sufficient evidence in the record to enable the ALJ to make the determination. Social Security Ruling 83-20, 1983 SSR LEXIS 25, prescribes the policy and procedure by which the Commissioner should determine the onset date of a disability. See SSR 83-20, 1983 SSR LEXIS 25. It defines the onset date as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 SSR LEXIS 25. "In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability," which may be critical to determinations such as the period for which the individual will be paid. Id.

SSR 83-20 also provides, in relevant part, that:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the

11

>  disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. The judgment, however, must have a legitimate medical basis. At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20.

In discussing SSR 83-20, the court, in Caces v. Comm'r, SSA, 560 Fed. Appx. 936 (11th Cir. 2014), held that "the plain language of SSR 83-20, 1983 SSR LEXIS 25, indicates that it is applicable only *after* there has been a finding of disability and it is then necessary to determine when the disability began."(citation omitted)(emphasis added). The Court held that where the ALJ found that the claimant was not disabled prior to the date last insured based on "ample, unambiguous medical evidence from both before and after the date last insured", and said finding was supported by the evidence, the ALJ did not err in failing to call a medical expert to determine an onset date of such a disability. Id. at 939; See also McManus v. Barnhard, 2004 U.S. Dist. LEXIS 27748, 2004 WL 3316303, *6 (M.D. Fla. Dec. 14, 2004)(court held that SSR 83-20 applies "to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous). Thus, SSR 83-20 applies in situations where the ALJ

12

must make a retroactive inference regarding the claimant's disability during the insured period, and the medical evidence covering the insured period is simply inadequate or ambiguous to enable the ALJ to made the determination.

Having reviewed the evidence in this case at length, the Court finds that the ALJ's decision that Plaintiff was not disabled before December 31, 2010 is supported by substantial evidence that is neither ambiguous nor inadequate. The record evidence reflects in 2006, Plaintiff received treatment at Thomas Hospital for bilateral lower extremity swelling, and she initially reported a pain level of 7/10, but it was later reduced to 3/10. (Tr. 26, 207-224). In 2007, Plaintiff's treating physician, Dr. Sullivan, noted during a new patient physical, that Plaintiff had mild arthritis, and some swelling in the hands. (Id. at 369). He further noted that these conditions had been on an "approximately 10 year course without significant synovitis or progression". (Id.). He further noted that that her conditions had not limited her activities; that her health had otherwise been good; and that she had a good range of motion (ROM) in her joints. (Id.).

In 2008, while Plaintiff was being treated for pregnancy, the medical records contain various references to rheumatoid arthritis, thyroid disorder, and high potassium; however, there is nothing in the records documenting any significant problems

13

arising from any of these conditions. (Id. at 255-256). Indeed, in 2009, Dr. Sullivan noted that while Plaintiff had some swelling and tenderness in areas of her body, she demonstrated a good ROM in her joints, and she had 5/5 strength in her upper and lower extremities. (Id. at 368). Dr. Sullivan's treatment notes between June and August of 2009 reflect that the Prednisone prescribed to treat Plaintiff's joint pain and swelling was decreased. (Id. at 367).

In 2010, Plaintiff's medical records include lab results from a heart scan, diabetes screening, a uterine scan, a thyroid scan, and an abdominal scan. The only tests relevant to her impairments are the thyroid scan, which was "normal" (id. at 377-86) and the abdominal scan, which was noted as "unremarkable," but for an obscuring of the pancreas and hepatic steatosis (fatty liver disease). (Id. at 385).

*After Plaintiff's date last insured,* December 31, 2010, the evidence reflects that Plaintiff had several appointments with Dr. Thomas Sapp, M.D., in 2011. (Id. at 396). The June 2011 notes reflect that Plaintiff expressed concern regarding continued weight gain, and Dr. Sapp diagnosed Plaintiff with hypothyroidism, obesity, weight related diabetes mellitus, hormone deficiency, marked libido decrease, and hypercholesterolemia. (Id. at 395). Dr. Sapp instructed Plaintiff to start walking, and Plaintiff reported that she was

capable of walking two miles a day, which was the course of action then prescribed by Dr. Sapp. (Id.) Medical records from later in 2011 list acute generalized myositis (inflammation and degeneration of muscle tissues), pain due to a proximal Achilles tear, respiratory illnesses, and continued hypothyroidism.(Id. at 390-394).

While Plaintiff argues that the evidence in this case related to her onset date is insufficient or ambiguous, she does not indicate in what respect the records are insufficient or ambiguous. The only document Plaintiff appears to rely upon to support her assertion is a July 30, 2012 assessment prepared by her treating physician, Dr. Sapp. In the document, Dr. Sapp avers that he had been seeing Plaintiff for over two years, and that it was his opinion that Plaintiff could not engage in any form of gainful employment "on a repetitive, completive, and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his/her work routine" due to her condition. (Tr. 508). There is nothing in Dr. Sapp's letter, nor in the record evidence, that indicates that Plaintiff's inability to work began nineteen months earlier, on or before December 31, 2010. To the contrary, the record evidence reflects that while Plaintiff claims a disability onset date of 2007, in 2008, she was able to obtain her college

15

degree, and in June 2011, she reported to Dr. Sapp that she was still capable of walking two miles a day. (Id. at 54, 395).

Based on the foregoing, the undersigned finds that the record contains substantial evidence, that is both adequate and unambiguous, and that enabled the ALJ to make the disability determination; thus, he was not required to consult a medical advisor on the question of whether Plaintiff was disabled ability prior to December 31, 2010, the date last insured. See Caces v. Commissioner, Soc. Sec. Admin., 560 Fed. Appx. 936, 937-939 (11th Cir. Mar. 27, 2014) (holding that the ALJ did not err in failing to consult a medical advisor where the medical records showed that the plaintiff's condition improved after his surgery, that medication and physical therapy proved successful in improving the plaintiff's condition, and no additional relief was sought until after the date last insured); Wright v. Colvin, 2015 U.S. Dist. LEXIS 38182, 2015 WL 1346043, *6 (S.D. Ala. March 24, 2015) (holding that the ALJ did not err in failing to consult a medical advisor where the plaintiff only required treatment for his condition for a few weeks prior to the date last insured; no serious complaints related to the condition were discussed in follow up appointments; and the plaintiff did not take any medication for the relevant condition); Gregory v. Astrue, 2011 U.S. Dist. LEXIS 37106, 2011 WL 1100292, *6 (M.D. Fla. Mar. 23, 2011) (holding that the ALJ did not err in

discounting retrospective opinions by the treating physician or failing to consult a medical advisor where the evidence showed only "intermittent acute symptoms" relating to the plaintiff's condition through the date last insured).

## V. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **23rd** day of **March, 2016.**

                                                **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**